FRANCIS J. O'REILLY, ESQ.
Attorney for Plaintiff
HONEY DO MEN GUTTERS, Inc.
1961 Route 6,
Carmel, NY 10512
Tel. No. 845-225-5800
Francis J. O'Reilly

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re                                               Chapter 7

TEBA GUMBS,                                         Case No. 17-23947(RDD)

        Debtor.

------------------------------------------------------------X

HONEY DO MEN GUTTERS, INC.,

        Plaintiff,

-against-                                           Adv. Pro. No.

TEBA GUMBS,

        Defendant.

------------------------------------------------------------X

## COMPLAINT

    Honey Do Men Gutters, Inc. by its attorney, Francis J. O'Reilly, Esq., for its Complaint against Teba Gumbs respectfully represents:

## INTRODUCTION

1. On December 18, 2017 the Debtor filed for Chapter 7.

2. Howard P. Magaliff, Esq. is the permanent Chapter 7 trustee.

1

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff Honey Do Men Gutters, Inc. is a domestic corporation with a business address is 1995 Route 6, Carmel, NY 10512.

4. At all relevant times, Honey Do Men Gutters, Inc. was and is a home improvement contractor licensed in Westchester County under license number WC-27524-H15

5. Defendant Teba Gumbs resides at 113 Smith Street, Peekskill, New York 10566.

6. This adversary proceeding is commenced pursuant to Bankruptcy Code Sections 105(a) and 523(a)(2)(A) and Federal Rule of Bankruptcy Procedure 7001(6).

7. This adversary proceeding arises in the Chapter 7 case, Case No. 17-23947(RDD) pending before the United States Bankruptcy Court for the Southern District of New York.

8. This Court has jurisdiction over this adversary proceeding pursuant to Judicial Code Sections 157 and 1334 [28 U.S.C. §§ 157 and 1334].

9. This adversary proceeding is a "core proceeding" pursuant to 157(b)(2)(I) [28 U.S.C. § 157(b)(2)(I)].

10. Venue is proper in this District pursuant to Judicial Code Section 1408 [28 U.S.C. § 1408].

## COUNT I
(Dischargeability of Debt-Bankruptcy Code Section 523(a)(2)(A)

11. The Plaintiff repeats each and every allegation contained in Paragraphs 1 through 9 of this Complaint.

12. The Plaintiff was retained by the Defendant to do renovations and remodeling work at the Defendant's residence, 113 Smith Street, Peekskill, New York 10566.

13. The scope of work for the remodeling project was the following:

    Demolish and rebuild an apartment in the debtor's residence

14. The Defendant subsequently expanded the scope of work to include the following:

    Open a wall to make the apartment part of the debtor's living space $6,500.00

    Repair rotted wood $1,600.00

    Additional upgrades   $12,214.00

15. The original cost of the project was $51,000.00.

16. The final cost of the project was $71,314.00.

17. The final cost of the project was increased because of all of the additional work that the Defendant requested.

18. The Defendant has paid a total of $9,500.00 to the Plaintiff.

19. The Plaintiff is owed $61,814.00 by the Defendant.

20. The Plaintiff secured financing for the Defendant through Enerbank. The financing arrangement was that the bulk of the funding was to be to be provided by Enerbank and the Defendant would be responsible for any shortage.

21. Enerbank approved the Defendant for financing.

22. Enerbank makes its payment with an electronic signature provided by both client and contractor prior to the expiration date of the loan. The Plaintiff texted and emailed the Defendant on a daily basis for the Defendant to sign the Enderbank documents so that Enerbank would release the funds and the Plaintiff could get paid for its goods and services. The Defendant represented to the Plaintiff that he was going to execute the Enerbank documents.

23. However, contrary to the Defendant's representations the Defendant never executed the Enerbank documents.

24. The Defendant made false representations to the Plaintiff stating that he was ready, willing and able to execute the Enerbank documents so that the Plaintiff could get paid for the materials and services that it had rendered to the Defendant.

25. The defendant knew that the only manner in which he could possibly pay for the services he requested from the plaintiff was to obtain financing.

26. The defendant continually represented to the plaintiff that he had financing in place.

27. The defendant, with fraudulent intent, refused to execute the necessary documents to obtain financing for the renovations that he ordered although he had been approved by Enerbank for the financing.

28. Upon information and belief, the Defendant acted with fraudulent intent to induce the Plaintiff to render services and provide materials for which the Defendant had no intention of paying the Plaintiff.

29. The Defendant's failure to execute the Enerbank loan documents resulted in the Enerbank loan expiring and the Plaintiff not being paid.

30. Thereafter, the Defendant reapplied for another Enerbank loan, but this application was denied.

31. The Defendant requested that the Plaintiff sign up to be a preferred provider with Wells Fargo because he had a home improvement loan with Well Fargo as a means of getting paid.

32. The Plaintiff subsequently became a preferred provider with Wells Fargo.

33. The Defendant represented to the Plaintiff that under the Well Fargo preferred provider program that he had $30,000.00 of available credit available to pay the Plaintiff.

34. The Defendant's representations concerning the $30,000.00 of available credit from a Wells Fargo home improvement loan was false. The Plaintiff never received a $30,000.00 payment under as a preferred provider with Wells Fargo.

35. The Defendant also sought to refinance his residence. The Defendant represented to the Plaintiff that there would be $30,000 in financing available to pay the Plaintiff.

36. The Defendant continued to email/text pictures of his loan process showing status for a refinance he was with Wells Fargo.

37. On December 5th 2016 the Defendant informed the Plaintiff that he got his commitment letter on the Wells Fargo refinance loan.

38. The Defendant's representation on December 5, 2016 concerning a loan commitment from Well Fargo was false.

39. Upon information and belief, the Defendant's representation made on December 5, 2016 was made with fraudulent intent to induce the Plaintiff to continue to work on the remodeling project and expend more services and provide more materials to the Defendant.

40. On January 8 2017, the Plaintiff made an inquiry as to the status of the Wells Fargo refinance loan to which the Plaintiff was informed by the Defendant that "the refi is dead with Wells Fargo."

41. On January 11, 2017, the Defendant requested that the Plaintiff reapply with Wells Fargo because the Plaintiff's participation as a preferred provider had expired.  Six months had elapsed without any activity from the Plaintiff as a preferred provider.

42. The Plaintiff reapplied to be a preferred provider with Well Fargo.

43. The Defendant stated that he would pay the Plaintiff $30,000 from Wells Fargo; $25,000 off of a couple of credit cards; and the balance from refinancing his residence.

44. On January 27, 2017 the Defendant represented to the Plaintiff that the home refinance loan was in underwriting.

45. On February 12, 2017 the Defendant informed the Plaintiff that the appraisal for his residence was $360,000.00.

46. Thereafter, the Plaintiff informed the Defendant it had been reapproved as a preferred provider with Wells Fargo and he could begin the home improvement loan process with Wells Fargo.

47. On April 7, 2017 the Defendant represented to the Plaintiff that he had a closing date on the home refinance loan for next week.

48. On May 3, 2017 the Defendant represented to the Plaintiff that he was still waiting to close on the home refinance loan.

49. On May 18, 2017 the Defendant represented to the Plaintiff that he would have $30,000 tomorrow and was getting the rest together.

50. The Defendant's representation to the Plaintiff that on May 19, 2017 that he would have $30,000.00 to pay the Plaintiff from a home refinance loan was a false representation.

51. The Defendant's representation made on May 18, 2017 to the Plaintiff that he was assembling the rest of the money that he owed to the Plaintiff was a materially false representation.

52. On June 17, 2017 the Defendant stated to the Plaintiff that he did everything he could do to refinance his residence and that he was unable to refinance and there was no extra money.

53. On July 31 2017 the Plaintiff inquired of the Defendant whether it was going to get paid. The Defendant response to the Plaintiff was that he "committed financial suicide three weeks ago and filed bankruptcy."

54. The Defendants representation on July 31, 2017 that he had filed for bankruptcy was another false representation because the Defendant did not file for bankruptcy until December 18, 2017.

55. As set forth herein, the Defendant made numerous material misrepresentations to the Plaintiff concerning his ability to finance and pay for the Plaintiff's services to induce the Plaintiff to provide services and materials to renovate and remodel the Defendant's residence.

56. As set forth herein, the Defendant made numerous material misrepresentations concerning his willingness to execute documents from Enerbank so that the Plaintiff could get paid for its goods and services to induce the Plaintiff to provide him with goods and services.

57. As set forth herein, the Defendant made numerous material misrepresentations to the Plaintiff concerning his home improvement loan with Wells Fargo to induce the Plaintiff to provide him with goods and services.

58. As set forth herein, the Defendant made numerous material misrepresentations to the Plaintiff concerning his home equity loan with Wells Fargo to induce the Plaintiff to provide him with goods and services.

59. As set forth herein, the Defendant made numerous material misrepresentations to the Plaintiff concerning his refinancing of his home and the imminent payment to the Plaintiff.

60. Upon information and belief, the Defendant acted with fraudulent intent because he did not intend to pay the Plaintiff for its services or materials.

61. Upon information and belief, the Defendant acted with fraudulent intent because he did desired to induce the Plaintiff into a false sense of security so that it would refrain from commencing suit against the Defendant.

62. The Defendant's numerous material misrepresentations reflect fraudulent intent because of his wanton disregard for the truth.

63. The Plaintiff justifiably relied on the Defendant's misrepresentations.

64. The Plaintiff has been damaged by the Defendant in the amount of $61,814.00.

65. By virtue of the foregoing, the Plaintiff, pursuant to Bankruptcy Code Section 523(a)(2)(A), seeks a judgment against the Defendant declaring that its debt for $61,814.00 is non-dischargeable.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against the Defendant declaring the Plaintiff's debt in the amount of $61,814.00 plus interest to be non-dischargeable pursuant to Bankruptcy Code Section 523(a)(2)(A); the costs of this civil action; and such other and further relief as this Court deems just and equitable.

Dated: Carmel, New York
       March 22, 2018

    FRANCIS J. O'REILLY, ESQ.
    Attorney for Plaintiff
    HONEY DO MEN GUTTERS, INC.

    By:_/s/Francis > O'Reilly, Esq.
      Francis J. O'Reilly
      1961 Route 6,
      Carmel, NY 10512
      Tel. No. 845-225-5800